1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAPELLO *et al.*,

       Plaintiffs,

    v.

SELING,  *et al.*,

       Defendants.

Case No. C02-5242RBL

REPORT AND
RECOMMENDATION
RE: MICHAEL HALGREN

**NOTED FOR:**
**September 23rd, 2005**

      This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B).  Before the court is one of 22 separate motions for summary judgment filed by defendants[1].  There are five defendants named in this action.  They are Mark Seling, Robert Smith, Vince Gollogly, Lyle Quasim, and Dennis Braddock.  This Report and Recommendation deals only with the claims of Michael Halgren.

<u>PROCEDURAL HISTORY</u>

      Defendant's filed a large number of summary judgment motions during July of 2004.

---

[1]
      There were a much larger number of motions but many plaintiffs have settled with defendants and only 22 plaintiff's remain.

REPORT AND RECOMMENDATION  - 1

1   The dispositive motion cut off date was July 30th, 2004. (Dkt. # 195). The motions were all

2   supported by a general brief and declarations, (Dkt. # 229 and 230 through 242). On July 15th,

3   2004, defendants filed a memorandum specific to Mr. Halgren. (Dkt. # 267). This

4   memorandum and attached exhibits set forth mental health treatment and issues specific to Mr.

5   Halgren. (Dkt. # 267).

6        On August 11th, 2004 plaintiffs filed a single response to all the summary judgment

7   motions containing over 1000 pages. (Dkt. # 404 to 424). While the court had authorized the

8   filing of an over length brief, the court did not authorize the filing of this document. It has taken

9   a considerable amount of time, but, the court has considered the briefing filed.

10       Plaintiff supports his response with his own declaration. (Dkt. # 419). Included in the

11  response is an untimely cross motion for summary judgement. Plaintiff's response will be

12  considered only as a response and the court will not entertain plaintiff's untimely dispositive

13  motion. The dispositive motion cut off date was July 30th, 2004. (Dkt. # 195).

14                            <u>FACTS AND CLAIMS</u>

15       This action is one in a series of legal actions regarding the Special Commitment Center,

16  SCC. Plaintiff challenges mental health and medical treatment provided and his conditions of

17  confinement. The plaintiff's are all persons confined for mental health treatment. The SCC is

18  designed to treat persons whose mental abnormalities or personality disorders make them likely

19  to engage in predatory acts of sexual violence. (Dkt. # 229, page 3).

20       For over a decade the SCC has operated under federal oversight as a result of

21  injunctions issued by the United States District Court for the Western District of Washington at

22  Seattle. The court found the conditions of confinement in 1991 to be unconstitutional and

23  found the mental health treatment offered at that point in time to be inadequate. <u>Turay v.</u>

24  <u>Seling</u>, C91-0664RSM. Federal  oversight continues in a limited capacity to this day. There

25  have been high and low points during the years of oversight including findings of contempt, and

26  findings that portions of the injunction had been fulfilled. On June 19th, 2004 the court found

27

28  REPORT AND RECOMMENDATION  - 2

1   the defendants in substantial compliance and lifted the injunctions with one exception. <u>Turay v.</u>

2   <u>Seling</u>, C91-0664RSM (Dkt # 1906). Judicial oversight continues only as to the one exception.

3       This plaintiff, Mr. Halgren, was sent to the Special Commitment Center August 23rd,

4   2000 and committed February 28th, 2002. His committed diagnosis include paraphilia not

5   otherwise specified (rape), exhibitionism, voyeurism, polysubstance abuse, and anti social

6   personality disorder. (Dkt. # 267, page 2). While plaintiff contests his diagnosis as inaccurate

7   he has come forward with no evidence to show the diagnosis is incorrect. (Dkt. # 419).

8   Plaintiff alleges that much of the information leading to this diagnosis is old, however, plaintiff's

9   history is the only information available to clinical personnel as plaintiff refuses treatment.

10      Plaintiff has refused treatment since January of 2003. (Dkt. # 267, page 2). Prior to

11  refusing treatment plaintiff was at phase II of a six phase program and was at privilege level 3.

12  Plaintiff refuses to engage in any treatment that forces him to disclose his offenses. (Dkt. #

13  267).

14      Plaintiff's primary claim centers around his disagreement with his diagnosis. He believes

15  the diagnosis incorrect because it is based on historical instead of current conduct. He also

16  complains about the turnover rate of therapists and his inability to engage in treatment because

17  of the amount of time it takes him to establish rapport with the therapists. (Dkt. # 419). These

18  issues combine to form the basis for his claim of inadequate mental health treatment.

19      Plaintiff's second major claim centers around the clinical decision as to what magazines

20  plaintiff is allowed to order. Plaintiff is not allowed to have several magazines he subscribes to

21  including For Him Magazine, Maxim, Elle, and American Photo. (Dkt. # 419). Plaintiff alleges

22  a first and fourteenth amendment violation.

23      The final group of claims deals with conditions of confinement and issues such as work,

24  vocational programs, and use of a privilege level system to reward positive behavior and

25  participation in treatment. Plaintiff works approximately five hours a week collecting garbage

26  and tearing down boxes and is paid state minimum wage. (Dkt. # 267, page 4).

27

28  REPORT AND RECOMMENDATION  - 3

1   At the request of defendant's counsel Dr. Dunham reviewed the treatment that has been

2   made available to plaintiff and in his professional opinion the treatment affords plaintiff an

3   opportunity to "improve the conditions for which he is detained." (Dkt. # 274, Declaration of

4   Jason Dunham, page 2 ¶ 3). Nowhere in the documentation filed by plaintiffs does Mr. Halgren

5   contest defendants factual assertions in any meaningful way.

6   Defendant's motion for summary judgement is very specific. Defendants seek summary

7   judgment because the complaint does not "accurately represent each plaintiff's claims, and

8   because **each plaintiff must demonstrate the merit of his own claims to go forward**". (Dkt.

9   # 229)(emphasis added). Defendants ask for summary judgment based on the Eleventh

10   Amendment, qualified immunity, personal participation, and lack of a constitutional violation.

11   (Dkt. # 229 pages 18 through 37). In essence, defendants argue that none of the plaintiffs can

12   show an injury of constitutional magnitude specific to that plaintiff.

13   Plaintiff places great weight on the findings of fact made in Turay v. Seling, and other

14   cases without a showing the findings apply to him. Thus, Mr. Halgren and the other plaintiff's

15   continues to argue this action in the abstract. By way of example he argues damages are "best

16   weighed by everyday spent without constitutionally adequate mental health treatment and more

17   considerate conditions of confinement than prisoners." (Dkt. # 404 page 6 of 51). Plaintiff's

18   argument does not address defendants position, the requirement of a specific evidentiary

19   showing.

20   <u>THE STANDARD</u>

21   Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the

22   pleadings, depositions, answers to interrogatories, and admissions on file, together with

23   affidavits, if any, show that there is no genuine issue of material fact and that the moving party

24   is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled

25   to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on

26   an essential element of a claim on which the nonmoving party has the burden of proof. Celotex

27

28   REPORT AND RECOMMENDATION  - 4

1  Corp. v. Catrett, 477 U.S. 317, 323 (1985).

2         There is no genuine issue of fact for trial where the record, taken as a whole, could not

3  lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v.

4  Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific,

5  significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ.

6  P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

7  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

8  of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service

9  Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

10        The determination of the existence of a material fact is often a close question.  The court

11  must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

12  e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W.

13  Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy

14  in favor of the nonmoving party only when the facts specifically attested by the party contradicts

15  facts specifically attested by the moving party. *Id.*

16        The nonmoving party may not merely state that it will discredit the moving party's

17  evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W.

18  Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra).  Conclusory, nonspecific

19  statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  Lujan v.

20  National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

21        In addition the court is mindful that an action for injunctive relief focuses on whether the

22  combined acts or omissions of state officials violate a constitutional right or duty owed the

23  plaintiff.  In contrast, when a plaintiff seeks to hold a defendant personally liable the inquiry into

24  causation is more specific and focuses on that person's specific actions.  Leer v. Murphy, 844 F.

25  2d. 628, 632 (9th Cir. 1988).

26                                    DISCUSSION

27

28  REPORT AND RECOMMENDATION  - 5

1    The plaintiffs' reliance on <u>Turay</u> and other SCC injunctive relief cases is misplaced.  The

2    holdings in those cases do not equate to findings of liability for damages against any named

3    defendant.  This is because of the difference in standards of proof between actions for injunctive

4    relief and actions for damages.  This difference was briefed by defendants who stated:

5              As Judge Leighton explained in a similar case: "Turay has no talismanic
       quality, the mere invocation of which conjures a cause of action." <u>Hoisington, et</u>
6      <u>al. v. Seling, et al.</u>, No. C01-5228-RBL, October 28, 2003, Order at 6 (dkt. #
       189). <u>Turay</u> is of assistance to plaintiffs in this case only if (1) they are able to
7      identify a specific ruling from <u>Turay</u> that, for qualified immunity purposes, was
       sufficient to put defendants on notice that their conduct potentially violated
8      plaintiffs' constitutional rights; or (2) they can point to a specific factual finding
       from <u>Turay</u> that could apply by way of collateral estoppel. In either case, each
9      plaintiff must first show how a specific ruling or finding from <u>Turay</u> applies to his
       situation and establishes a violation of his constitutional rights. In doing so, each
10     plaintiff must be aware that relief ordered in <u>Turay</u> does not represent the
       constitutional minimum. <i>See</i> <u>Sharp v. Weston</u>, 233 F.3d 1166, 1173 (9th Cir.
11     2000) ("A court may order 'relief that the Constitution would not of its own
       force initially require if such relief is necessary to remedy a constitutional
12     violation.'"). In <u>Sharp</u>, the Ninth Circuit specifically noted that Judge Dwyer's
       findings in <u>Turay</u> did not imply the existence of constitutional rights. Thus, for
13     example, Judge Dwyer's order that SCC provide residents private visitation
       rooms and educational opportunities did not mean that the residents had a
14     constitutional entitlement to those things. Id.

15   (Dkt. # 229, pages 21 and 22).

16   The defendants filed a separate motion for summary judgment for each plaintiff that sets

17   forth the treatment provided or available to that person and that person's factual history.  The

18   summary judgement standard allows defendants to require a plaintiff to "present specific,

19   significant probative evidence.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S.

20   574, 586 (1986).

21   Mr. Halgen was informed of the summary judgment standard.. (Dkt. # 195).  The court

22   specifically informed plaintiff that if the opposing party moved for summary judgment he would

23   need to:

24        **[s]et out specific facts in declarations, deposition, answers to
       interrogatories, or authenticated documents, as provided in Rule 56(e), that**
25     **contradict the facts shown in the defendant's declarations and documents**
       **and show that there is a genuine issue of material fact for trial.  If you do**
26     **not submit your own evidence in opposition, summary judgment , if**
       **appropriate, may be entered against you.  If summary judgment is granted,**

27

28   REPORT AND RECOMMENDATION  - 6

1    **your case will be dismissed and there will be no trial.**

2       Rand v. Rowland, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added).

3   (Dkt. # 195). (emphasis in original order).  Mr. Halgren has failed to come forward with any

4   evidence to show that any right or duty owed to him has been violated by any named defendant

5   in this action.  His allegations in the complaint are unsupported by any evidence that shows he

6   has suffered any injury of constitutional magnitude that is attributable to any of the five named

7   defendants.  His deposition and the attachments to defendant's motion shows he withdrew from

8   treatment because he would have to disclose details regarding his past conduct.  He does not

9   show the treatment provided was inadequate.

10       Plaintiff does show a delay of several days in obtaining dental treatment due to poor

11   communication between Department of Corrections staff and Department of Social Health

12   Services staff, but, he does not implicate any of the five named defendants as having taken part

13   in the delay.  (Dkt. # 419 attachment m).  Nor does plaintiff implicate any policy enacted by

14   defendants as causing this delay.  The court notes that after moving to the new facility the SCC

15   residents now have their own medical and dental facilities and are no longer dependant on the

16   Department of Corrections.  (Dkt. # 229).  Thus, plaintiff lacks standing to seek injunctive relief

17   as the manner in which he obtains dental care has changed.  Nelsen v. King County, 895 F.2d

18   1248 (9th Cir. 1990).

19       The basis for many of plaintiff's claims, including the vocational training and jobs

20   available claims, is the argument that if Department of Corrections prisoners are able to obtain

21   an item or the Department of Corrections gives them a privilege then SCC residents

22   automatically have some sort of entitlement to that item or privilege. The foundation for this

23   argument is the statement that residents are entitled to more considerate treatment then inmates.

24   The reasoning behind the statement is the fact that an inmates confinement contains an element

25   of punishment while the residents confinement is for treatment.

26       It does not logically follow that everything inmates get should be automatically given to

27

28   REPORT AND RECOMMENDATION  - 7

1   residents.  An example is the magazine claim in this case.  The Supreme Court has made it clear

2   that states have wide latitude in developing treatment regimes for sexually violent predators.

3   Kansas v. Hendricks, 521 U.S. 346, 368, n.4 (1997) (citing Romero v. Young,  457 U.S. 307,

4   317 (1982)).  Here, a clinical decision about the types of magazines that would be allowed was

5   made by plaintiff's treatment team.  (Dkt. # 419 attachments).  This decision overruled the

6   decision by an individual therapist.  (Dkt. # 419 attachments).

7          Plaintiff now contends that because he had the magazines in prison and at the Mc Neil

8   Island Correctional Complex he should be allowed the item at the new facility.  He alleges a

9   First and Fourth Amendment violation but does not show personal participation by any of the

10  named defendants.

11         Treatment providers must consider the effect plaintiff's magazines might have not only

12  on plaintiff's treatment, but also on the treatment of other residents who might view the

13  material.  Plaintiff has failed to show the decision to ban the material was not rationally related

14  to treatment.  Further, the fact that the decision was made by a treatment team, and sent to that

15  team after plaintiff filed a grievance shows both an operative grievance system and at least

16  minimal due process.

17         Review of the complaint reveals sweeping conclusory allegation, and in some cases

18  polarized positions on an issue.  By way of example. Plaintiffs complain of being housed with

19  persons they deem to have a "bona fide mental illness."  (Dkt. # 51, page 13 ¶ 5.5).  Yet when

20  the residents are segregated based on needs and whether they are in treatment plaintiffs still

21  complain. (Dkt. # 419, page 7 ¶ 25).  In neither case has plaintiff shown a violation of

22  constitutional magnitude attributable to any named defendant in this action.  Further, plaintiff

23  has failed to show the decision made is not the product of mental health providers exercising

24  their professional judgment.

25         Another example of the complaint and declaration being insufficient in this case is

26  plaintiff's contentions regarding an incident occurring in the old facility on July 8th.  Plaintiff

27

28  REPORT AND RECOMMENDATION  - 8

does not give the year.  According to plaintiff:

> [A] paramilitary squad (of sorts) entered A-West to confront a resident whom was locked in his cell.  This group consisted of approximately a dozen persons completely garbed in <u>Riot Control Gear</u> that disrupted the whole institution with a shut down of the institution and sends everyone to their cells [sic] This, I thought as whole, to be very disconcerting and considered it to be an insult.  After, all, this is supposed to be a treatment environment, not a maximum security prison.

(Dkt. # 419, page 7 ¶ 24).

 Plaintiff provides no information why the squad was there, what the resident locked in his room was doing, or who ordered this level of response.  Plaintiff is reminded that the United States Supreme Court has found the housing of persons with a mental disability that makes them likely to engage predatory acts of sexual violence in a secure facility for treatment constitutional. <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997).  Maintaining the security of the facility and protecting residents are valid state functions.  This would include taking action to stop a resident locked in his room from committing suicide or destroying property.

    In short, the court has reviewed the complaint, the defendants motion for summary judgment, plaintiff's response, and his declaration.  To survive summary judgment the plaintiff needed to identify a clearly established right and produce facts showing a violation of that right in which the named defendants personally participated.  Plaintiff has not come forward with probative evidence to defeat defendants motion.  The defendants are entitled to Summary Judgment.   This plaintiff's claims should be **DISMISSED WITH PREJUDICE.**

<u>CONCLUSION</u>

    Defendants are entitled to summary judgment as plaintiff has failed to show any injury of constitutional magnitude attributable to the conduct of the five named defendants.  A proposed order and proposed judgment accompanies this Report and Recommendation.

    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

REPORT AND RECOMMENDATION  - 9

objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 23rd, 2005**, as noted in the caption.

DATED this 30th day of August, 2005.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION  - 10