UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAPELLO *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>SELING, *et al.*,<br><br>    Defendants. | Case No. C02-5242RBL<br><br>REPORT AND RECOMMENDATION RE: DALE DAVIS<br><br>**NOTED FOR:**<br>**September 23rd 2005** |

    This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Before the court is the one of 22 separate motions for summary judgment filed by defendants[1]. There are five defendants named in this action. They are Mark Seling, Robert Smith, Vince Gollogly, Lyle Quasim, and Dennis Braddock. This Report and Recommendation deals only with the claims of Dale Davis.

<u>PROCEDURAL HISTORY</u>

    Defendants filed a large number of summary judgment motions during July of 2004.

---

[1] There were a much larger number of motions but many plaintiffs have settled with defendants and only 22 plaintiffs remain.

REPORT AND RECOMMENDATION - 1

1  The dispositive motion cut off date was July 30th, 2004. (Dkt. # 195). The motions were all supported by a general brief and declarations. (Dkt. # 229 and 230 through 242). On July 15th, 2004, defendants filed a memorandum specific to Mr. Davis. (Dkt. # 275). This memorandum and attached exhibits set forth mental health treatment and issues specific to Mr. Davis. (Dkt. # 275).

On August 11th, 2004 plaintiffs filed a single response to all the summary judgment motions containing over 1000 pages. (Dkt. # 404 to 424). While the court had authorized the filing of an over length brief, the court did not authorize the filing of this document. It has taken a considerable amount of time, but, the court has considered the briefing filed.

Plaintiff supports his response with his own affidavit. (Dkt. # 407). Included in the response is an untimely cross motion for summary judgement. Plaintiff's response will be considered only as a response and the court will not entertain plaintiff's untimely dispositive motion. The dispositive motion cut off date was July 30th, 2004. (Dkt. # 195).

## FACTS AND CLAIMS

This action is one in a series of legal actions regarding the Special Commitment Center, SCC. Plaintiff challenges mental health and medical treatment provided and his conditions of confinement. The plaintiff's are all persons confined for mental health treatment. The SCC is designed to treat persons whose mental abnormalities or personality disorders make them likely to engage in predatory acts of sexual violence. (Dkt. # 229, page 3).

For over a decade the SCC has operated under federal oversight as a result of injunctions issued by the United States District Court for the Western District of Washington at Seattle. The court found the conditions of confinement in 1991 to be unconstitutional and found the mental health treatment offered at that point in time to be inadequate. Turay v. Seling, C91-0664RSM. Federal oversight continues in a limited capacity to this day. There have been high and low points during the years of oversight including findings of contempt, and findings that portions of the injunction had been fulfilled. On June 19th, 2004 the court found

REPORT AND RECOMMENDATION - 2

the defendants in substantial compliance and lifted the injunctions with one exception. <u>Turay v. Seling</u>, C91-0664RSM (Dkt # 1906). Judicial oversight continues only as to the one exception.

This plaintiff, Mr. Davis, was sent to the Special Commitment Center May of 1999 and committed in August of 2000. His committed diagnosis include Axis I pedophilia sexually attracted to males, non exclusive type; noncompliance with treatment; and Axis II personality disorder, not otherwise specified (with anti social and passive aggressive features). (Dkt. # 275, page 2).

Plaintiff participated in treatment for approximately one year, according to him, out of boredom. (Dkt. # 275, Exhibit 2, Deposition of Dale Davis). He has consistently refused treatment since April 26th, 2002. (Dkt. # 276, attached assessment of Dr. Durham, page 6). Prior to April 26th, 2002 the plaintiff had been in treatment and was at phase II of a VI phase program. <u>Id</u>. At page 5.

Plaintiff's primary claim centers around his allegation that the treatment provided was inadequate. He provides several specific allegations of clinical staff behaving unprofessionally. (Falling asleep in class, talking only about themselves, not showing up for class or cancelling and not teaching the subject matter of the class) (Dkt. # 275, Exhibit 2, Deposition of Dale Davis). He admits however, that he never complained to supervisors or authority figures regarding this behavior. There is no indication any of the named defendants in this action played any part in or condoned the alleged conduct. (Dkt. # 275, Exhibit 2, Deposition of Dale Davis).

Plaintiff's second major claim centers around the clinical decision as to what movies residents are allowed to watch. He contests residents not being allowed to have R-rated movies, but fails to show the decision not to allow sexually explicit material or R-rated movies is not based on the professional judgment of treatment providers. (Dkt. # 407). Plaintiff alleges a first and fourteenth amendment violation.

The final group of claims deals with conditions of confinement and issues such as work.

REPORT AND RECOMMENDATION - 3

1  However, plaintiff makes clear in his deposition he considers this action to only be about
2  treatment.  (Dkt. # 275, Exhibit 2, Deposition of Dale Davis).
3      At the request of defendant's counsel, Dr. Dunham reviewed the treatment that has
4  been made available to plaintiff and in his professional opinion the treatment affords plaintiff an
5  opportunity to "improve the conditions for which he is detained."  (Dkt. # 276, Declaration of
6  Jason Dunham, page 2 ¶ 3).  Nowhere in the documentation filed by plaintiff does Mr. Davis
7  contest defendants factual assertion in any meaningful way.
8      Defendant's motion for summary judgement is very specific.  Defendants seek summary
9  judgment because the complaint does not "accurately represent each plaintiff's claims, and
10 because **each plaintiff must demonstrate the merit of his own claims to go forward**".  (Dkt.
11 # 229)(emphasis added).  Defendants ask for summary judgment based on the Eleventh
12 Amendment, qualified immunity, personal participation, and lack of a constitutional violation.
13 (Dkt. # 229, pages 18 through 37).  In essence, defendants argue that none of the plaintiffs can
14 show an injury of constitutional magnitude specific to that plaintiff.
15     Plaintiff places great weight on the findings of fact made in Turay v. Seling, and other
16 cases without a showing the findings apply to him.  Thus, Mr. Davis and the other plaintiff's
17 continue to argue this action in the abstract.  By way of example he argues damages are "best
18 weighed by everyday spent without constitutionally adequate mental health treatment and more
19 considerate conditions of confinement than prisoners."  (Dkt. # 404 page 6 of 51).  Plaintiff's
20 argument does not address defendants position or the requirement of a specific evidentiary
21 showing.
22     Mr. Davis does provide specific examples of behavior by clinical personnel that, if true,
23 would be unprofessional, however he fails to tie this behavior to any named defendant in this
24 action and therefore fails to show personal participation.  He also fails to show how this alleged
25 behavior is a violation of a constitutional right.

28 REPORT AND RECOMMENDATION - 4

## THE STANDARD

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. *Id.*

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v.

REPORT AND RECOMMENDATION - 5

1   National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

2       In addition the court is mindful that an action for injunctive relief focuses on whether the combined acts or omissions of state officials violate a constitutional right or duty owed the plaintiff. In contrast, when a plaintiff seeks to hold a defendant personally liable the inquiry into causation is more specific and focuses on that person's specific actions. Leer v. Murphy, 844 F. 2d. 628, 632 (9th Cir. 1988).

## DISCUSSION

The plaintiffs' reliance on Turay and other SCC injunctive relief cases is misplaced. The holdings in those cases do not equate to findings of liability for damages against any named defendant. This is because of the difference in standards of proof between actions for injunctive relief and actions for damages. This difference was briefed by defendants who stated:

> As Judge Leighton explained in a similar case: "Turay has no talismanic quality, the mere invocation of which conjures a cause of action." Hoisington, et al. v. Seling, et al., No. C01-5228-RBL, October 28, 2003, Order at 6 (dkt. # 189). Turay is of assistance to plaintiffs in this case only if (1) they are able to identify a specific ruling from Turay that, for qualified immunity purposes, was sufficient to put defendants on notice that their conduct potentially violated plaintiffs' constitutional rights; or (2) they can point to a specific factual finding from Turay that could apply by way of collateral estoppel. In either case, each plaintiff must first show how a specific ruling or finding from Turay applies to his situation and establishes a violation of his constitutional rights. In doing so, each plaintiff must be aware that relief ordered in Turay does not represent the constitutional minimum. See Sharp v. Weston, 233 F.3d 1166, 1173 (9th Cir. 2000) ("A court may order 'relief that the Constitution would not of its own force initially require if such relief is necessary to remedy a constitutional violation.'"). In Sharp, the Ninth Circuit specifically noted that Judge Dwyer's findings in Turay did not imply the existence of constitutional rights. Thus, for example, Judge Dwyer's order that SCC provide residents private visitation rooms and educational opportunities did not mean that the residents had a constitutional entitlement to those things. Id.

(Dkt. # 229 pages 21 and 22).

The defendants filed a separate motion for summary judgment for each plaintiff that sets forth the treatment provided or available to that person and that person's factual history. The summary judgement standard allows defendants to require a plaintiff to "present specific, significant probative evidence." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

REPORT AND RECOMMENDATION - 6

574, 586 (1986).

Mr. Davis was informed of the summary judgment standard. (Dkt. # 195). The court specifically informed plaintiff that if the opposing party moved for summary judgment he would need to:

> **[s]et out specific facts in declarations, deposition, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment , if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.**

Rand v. Rowland, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added). (Dkt. # 195). (emphasis in original order). Mr. Davis has failed to come forward with any evidence to show that any right or duty owed to him has been violated by any named defendant in this action. His allegations in the complaint are unsupported by any evidence that shows he has suffered any injury of constitutional magnitude that is attributable to any of the five named defendants. His deposition and the attachments to defendant's motion show the plaintiff withdrew from treatment. The plaintiff does not show that the treatment provided by any of the named defendants was inadequate. He does raise a question whether subordinate persons, who are not named defendants, acted appropriately, but this does not equate to liability against any named defendant. See, Leer v. Murphy, 844 F. 2d. 628, 632 (9th Cir. 1988).

For the most part plaintiff's affidavit argues this case in the abstract. He complains of the actions of SCC staff without implicating any of the named defendants. (Dkt. # 407).

Plaintiff complains of the segregating of residents by living units and complains he cannot visit persons in "Alder Unit." Defendants addressed this issue specifically in the overview briefing. (Dkt. # 229, page 10). Residents have access to there own living unit, not the living unit of others. The housing assignments are based on need and treatment considerations, to include the following: does the resident have special needs, what is the residents treatment status, and, what level of maintenance does the resident require, low,

REPORT AND RECOMMENDATION - 7

1    medium, or high. (Dkt. # 229, page10). Plaintiff has failed to contradict defendants assertions
2    that the housing assignments and segregation of the residents into groups is not the product of
3    professional judgment and designed to allow residents who wish treatment to receive treatment
4    without distraction.

5    The basis for many of plaintiff's claims, including vocational training and jobs available
6    claims, is the argument that if prisoners are able to obtain an item or the Department of
7    Corrections gives them a privilege then SCC residents automatically have some sort of
8    entitlement to that item or privilege. The foundation for this argument is the statement that SCC
9    residents are entitled to more considerate treatment then prison inmates. The reasoning behind
10   the statement is the fact that an inmates confinement contains an element of punishment while
11   the residents confinement is for treatment.

12   It does not logically follow that everything an inmate gets should be automatically given
13   to residents. An example is the movie claim in this case. The Supreme Court has made it clear
14   that states have wide latitude in developing treatment regimes for sexually violent predators.
15   Kansas v. Hendricks, 521 U.S. 346, 368, n.4 (1997) (citing Romero v. Young, 457 U.S. 307,
16   317 (1982)). Here, a clinical decision about the types of movies that will be available has been
17   made. (Dkt. # 407 attachments). R-rated movies which depict more sex or violence than
18   movies rated PG or G, are not allowed.

19   Any decision made by a professional with regard to treatment or the treatment
20   environment is presumptively constitutional. "Liability may be imposed only when the decision
21   by the professional is such a substantial departure from accepted professional judgment,
22   practice, or standards as to demonstrate that the person responsible actually did not base their
23   decision on such a judgment." Youngberg v. Romeo, 457 U.S. 307, 323 (1982). Plaintiff
24   bears the burden or showing the decision not to allow r-rated movies is not rationally related to
25   maintaining a proper treatment environment.

26   Treatment providers must consider the effect plaintiff's movie might have not only on

28   REPORT AND RECOMMENDATION - 8

plaintiff's treatment, but also on the treatment of other residents who might view the material. Plaintiff has failed to show the decision to ban r-rated material was not rationally related to treatment.

Review of the complaint reveals sweeping conclusory allegation, and in some cases polarized positions on an issue. By way of example, plaintiffs complain of being housed with persons they deem to have "bona fide mental illness". (Dkt. # 51, page 13 ¶ 55). Yet when the residents are segregated based on needs and whether they are in treatment, plaintiff complains. (Dkt. # 407, page 6 ¶ 21). In neither case has plaintiff shown a violation of constitutional magnitude attributable to any named defendant in this action. Further, plaintiff has failed to show the decision made is not the product of mental health providers exercising their professional judgment.

In short, the court has reviewed the complaint, the defendants motion for summary judgment, plaintiff's response, and his declaration. To survive summary judgment the plaintiff needed to identify a clearly established constitutional right and produce facts showing a violation of that right in which the named defendants personally participated. Plaintiff's has not come forward with probative evidence to defeat defendants motion. The defendants are entitled to Summary Judgment. This plaintiff's claims should be **DISMISSED WITH PREJUDICE.**

## CONCLUSION

Defendants are entitled to summary judgment as plaintiff has failed to show any injury of constitutional magnitude attributable to the conduct of the five named defendants. A proposed order and proposed judgment accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the

REPORT AND RECOMMENDATION - 9

time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 23rd, 2005**, as noted in the caption.

DATED this 30th day of August, 2005.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10