1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

12

13 | CAPELLO *et al.*,

Plaintiffs,

14 | v.

15 | SELING, *et al.*,

16 | Defendants.

17

Case No. C02-5242RBL

REPORT AND
RECOMMENDATION
RE: RICHARD CURTIS

**NOTED FOR:**
**September 23rd 2005**

18      This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant

19  to Title 28 U.S.C. § 636(b)(1)(B).  Before the court is one of 22 separate motions for summary

20  judgment filed by defendants  There are five defendants named in this action.  They are Mark

21  Seling, Robert Smith, Vince Gollogly, Lyle Quasim, and Dennis Braddock.  This Report and

22  Recommendation deals only with the claims of Richard Curtis.

23                                  PROCEDURAL HISTORY

24      Defendant's filed a large number of summary judgment motions during July of 2004.

25  The dispositive motion cut off date was July 30th, 2004.  (Dkt. # 195).  The motions were all

26  supported by a general brief and declarations. (Dkt. # 229 and 230 through 242).  On July 20th,

27  2004, defendants filed a memorandum specific to Mr. Curtis.  (Dkt. # 289).  This memorandum

28  REPORT AND RECOMMENDATION  - 1

1   and attached exhibits set forth mental health treatment and issues specific to Mr. Curtis.  (Dkt. #

2   289 and 290).

3         On August 11th, 2004 plaintiffs filed a single response to all the summary judgment

4   motions containing over 1000 pages.  (Dkt. # 404 to 424).  While the court had authorized the

5   filing of an over length brief, the court did not authorize the filing of this document.  It has taken

6   a considerable amount of time, but, the court has considered the briefing filed.  Plaintiff also

7   supports his opposition response with his own affidavit.  (Dkt. # 428).

8         Included in the response is an untimely cross motion for summary judgement.  Plaintiff's

9   response will be considered only as a response and the court will not entertain plaintiff's

10  untimely dispositive motion.  The dispositive motion cut off date was July 30th, 2004.  (Dkt. #

11  195).

12                        FACTS AND CLAIMS

13        This action is one in a series of legal actions regarding the Special Commitment Center,

14  SCC.  Plaintiff challenges mental health and medical treatment provided and his conditions of

15  confinement.  The plaintiff's are all persons confined for mental health treatment.  The SCC is

16  designed to treat persons whose mental abnormalities or personality disorders make them likely

17  to engage in predatory acts of sexual violence.  (Dkt. # 229, page 3).

18        For over a decade the SCC has operated under federal oversight as a result of

19  injunctions issued by the United States District, Western District of Washington at Seattle.  The

20  court found the conditions of confinement in 1991 to be unconstitutional and found the mental

21  health treatment offered at that point in time to be inadequate.  Turay v. Seling, C91-0664RSM.

22  Federal  oversight continues in a limited capacity to this day.  There have been high and low

23  points during the years of oversight including findings of contempt, and findings that portions of

24  the injunction had been fulfilled.  On June 19th, 2004 the court found the defendants in

25  substantial compliance and lifted the injunctions with one exception.  Turay v. Seling, C91-

26  0664RSM (Dkt # 1906).  Judicial oversight continues only as to the one exception.

27

28  REPORT AND RECOMMENDATION  - 2

1    The plaintiff, Mr. Curtis,  was sent to the Special Commitment Center in November of

2  2001.  His diagnosis on arrival at SCC include sexual sadism, including non-consenting rape;

3  pedophilia, sexually attracted to females, non exclusive; alcohol dependence and other substance

4  abuse and antisocial personality disorder.  (Dkt. # 289, page 2).

5    Mr. Curtis engaged in treatment and progressed quickly to a higher level or phase of

6  treatment.  The fast progression was due in part to treatment the plaintiff received while

7  incarcerated.  (Dkt. # 289, page 3).  While the plaintiff made progress, his participation in

8  individual therapy was minimal, he dropped out of at least one class because he did not like the

9  instructor and destroyed his treatment journals because he believed them to be incriminatory.

10  (Dkt. # 289, page 3).  The plaintiff has been taking Zoloff as part of his treatment at the SCC.

11  He admits to having fewer deviant fantasies and less deviant behavior because of the

12  medication.  (Dkt. # 289, Deposition of Richard Curtis).

13    The plaintiff's chief complaint, when deposed, was his concern that residents should be

14  held more accountable for their actions and distorted thinking. (Dkt. # 289, Deposition of

15  Richard Curtis).  He admits that his goal in bringing this litigation is to close the facility and gain

16  his release.  (Dkt. # 289, page 4; See also: Dkt. # 289, Deposition of Richard Curtis, pages 102

17  to 104).  Two of the named defendants in this action, Mr. Quasim and Mr. Smith left state

18  employment prior to plaintiff ever having been placed at the Special Commitment Center.  (Dkt.

19  # 289, page 7).

20    At the request of the defendant's counsel, Dr. Lynn Sullivan Saari reviewed the mental

21  health treatment that has been made available to the plaintiff and in her professional opinion the

22  treatment affords Mr. Curtis an opportunity to "improve the conditions for which he is

23  detained." (Dkt. # 277, attached declaration of Dr. Lynn Sullivan Saari, page 2).  Nowhere in

24  the documentation filed by plaintiff does Mr. Curtis contest defendants factual assertion in any

25  meaningful way although the plaintiff does raise questions regarding the professionalism of

26  persons who are not named as defendants in this action.  (Dkt. # 428).

27

28  REPORT AND RECOMMENDATION  - 3

1    The defendant's motion for summary judgement is very specific.  They seek summary

2  judgment because the complaint does not "accurately represent each plaintiff's claims, and

3  because **each plaintiff must demonstrate the merit of his own claims to go forward**".  (Dkt.

4  # 229)(emphasis added).  The defendants seek summary judgment based on the Eleventh

5  Amendment, qualified immunity, personal participation, and lack of a constitutional violation.

6  (Dkt. # 229, pages 18 through 37).  In essence, defendants argue none of the plaintiffs can show

7  an injury of constitutional magnitude specific to that plaintiff caused by any named defendant.

8    The plaintiff's declaration and filings in opposition to summary judgment highlight

9  defendants argument.  For the most part, Mr. Curtis argues this action in the abstract and

10  provides few examples or facts specific to him.  (Dkt. # 428, Declaration of Richard Curtis).  In

11  the single response filed by all plaintiffs, the plaintiffs place great weight on the findings of fact

12  made in Turay v. Seling, and other cases without a showing the findings apply to them.  By way

13  of example, the plaintiffs allege damages are "best weighed by everyday spent without

14  constitutionally adequate mental health treatment and more considerate conditions of

15  confinement than prisoners."  (Dkt. # 404 page 6 of 51).  Plaintiffs' argument does not address

16  defendants position or the requirement of a specific evidentiary showing.

17    Mr. Curtis does raise issues specific to him in his declaration.  He complains his room

18  was searched and eight apples were taken.  (Dkt. # 428, page 2).  He alleges that he was sent a

19  memo telling him he would be allowed to review his file but complains that a file review did not

20  occur.  However, he fails to show that he took the steps outlined in the memo to obtain a file

21  review.  (Dkt. # 428, page 5).  He complains that the level system is punishment and alleges

22  housing assignments are "punitive."  (Dkt. # 428, page 6).  Plaintiff complains that he was once

23  forced to met with his therapist in a unit day room within sight and hearing of other residents

24  and he found the experience to be humiliating and embarrassing.  (Dkt. # 428, page 9).

25

26                              THE STANDARD

27

28  REPORT AND RECOMMENDATION  - 4

1    Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the

2    pleadings, depositions, answers to interrogatories, and admissions on file, together with

3    affidavits, if any, show that there is no genuine issue of material fact and that the moving party

4    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled

5    to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on

6    an essential element of a claim on which the nonmoving party has the burden of proof.  Celotex

7    Corp. v. Catrett, 477 U.S. 317, 323 (1985).

8    There is no genuine issue of fact for trial where the record, taken as a whole, could not

9    lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v.

10   Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific,

11   significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ.

12   P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

13   supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

14   of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service

15   Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

16   The determination of the existence of a material fact is often a close question.  The court

17   must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

18   e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W.

19   Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy

20   in favor of the nonmoving party only when the facts specifically attested by the party contradicts

21   facts specifically attested by the moving party. *Id.*

22   The nonmoving party may not merely state that it will discredit the moving party's

23   evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W.

24   Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra).  Conclusory, nonspecific

25   statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  Lujan v.

26   National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

27

28   REPORT AND RECOMMENDATION  - 5

1    In addition the court is mindful that an action for injunctive relief focuses on whether the

2  combined acts or omissions of state officials violate a constitutional right or duty owed the

3  plaintiff.  In contrast, when a plaintiff seeks to hold a defendant personally liable the inquiry into

4  causation is more specific and focuses on that persons specific actions.  Leer v. Murphy, 844 F.

5  2d. 628, 632 (9th Cir. 1988).

6                                   DISCUSSION

7          A.       Defendants Quasim and Smith.

8          Defendants Quaism and Smith no longer worked for the Department of Social Health

9  Services at the time the plaintiff was first sent to the Special Commitment Center.  Mr. Quasim

10  left in June of 2000 and Dr. Smith in August of 1999.  Plaintiff was not at the facility until

11  November of 2001.  The inquiry into causation must be individualized and focus on the duties

12  and responsibilities of each individual defendant whose acts and omissions are alleged to have

13  caused a constitutional violation.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  At a

14  minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized,

15  approved, or knowingly acquiesced in the unconstitutional conduct.  Bellamy v. Bradley, 729

16  F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984).  Plaintiff has failed to come forward

17  with any evidence to show how these two defendants violated any right or duty owed plaintiff

18  and these two defendants are entitled to dismissal.

19          B.       Treatment and conditions of confinement in general.

20          The plaintiffs' reliance on Turay and other SCC injunctive relief cases is misplaced.  The

21  holdings in those cases do not equate to findings of liability for damages against any named

22  defendant.  This is because of the difference in standards of proof between actions for injunctive

23  relief and actions for damages.  This difference was briefed by defendants who stated:

24          As Judge Leighton explained in a similar case: "Turay has no talismanic
        quality, the mere invocation of which conjures a cause of action." Hoisington, et
25      al. v. Seling, et al., No. C01-5228-RBL, October 28, 2003, Order at 6 (dkt. #
        189). Turay is of assistance to plaintiffs in this case only if (1) they are able to
26      identify a specific ruling from Turay that, for qualified immunity purposes, was
        sufficient to put defendants on notice that their conduct potentially violated

27

28  REPORT AND RECOMMENDATION  - 6

1   plaintiffs' constitutional rights; or (2) they can point to a specific factual finding
    from Turay that could apply by way of collateral estoppel. In either case, each
2   plaintiff must first show how a specific ruling or finding from Turay applies to his
    situation and establishes a violation of his constitutional rights. In doing so, each
3   plaintiff must be aware that relief ordered in Turay does not represent the
    constitutional minimum. *See* Sharp v. Weston, 233 F.3d 1166, 1173 (9th Cir.
4   2000) ("A court may order 'relief that the Constitution would not of its own
    force initially require if such relief is necessary to remedy a constitutional
5   violation.'"). In Sharp, the Ninth Circuit specifically noted that Judge Dwyer's
    findings in Turay did not imply the existence of constitutional rights. Thus, for
6   example, Judge Dwyer's order that SCC provide residents private visitation
    rooms and educational opportunities did not mean that the residents had a
7   constitutional entitlement to those things. Id.

8   (Dkt. # 229 pages 21 and 22).

9   The defendants filed a separate motion for summary judgment for each plaintiff that sets

10  forth the treatment provided or available to that person and that persons factual history.  The

11  summary judgement standard allows defendants to require a plaintiff to "present specific,

12  significant probative evidence." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

13  574, 586 (1986).

14  Mr. Curtis was informed of the summary judgment standard.  (Dkt. # 195).  The court

15  specifically informed plaintiff that if the opposing party moved for summary judgment he would

16  need to:

17  **[s]et out specific facts in declarations, deposition, answers to
    interrogatories, or authenticated documents, as provided in Rule 56(e), that**
18  **contradict the facts shown in the defendant's declarations and documents
    and show that there is a genuine issue of material fact for trial.  If you do**
19  **not submit your own evidence in opposition, summary judgment , if
    appropriate, may be entered against you.  If summary judgment is granted,**
20  **your case will be dismissed and there will be no trial.**

21  Rand v. Rowland, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added).

22  (Dkt. # 195). (emphasis in original order).  Mr. Curtis has failed to come forward with any

23  evidence to show any constitutional right or duty owed to him has been violated by any named

24  defendant in this action.  His allegations in the complaint are unsupported by any evidence that

25  shows he has suffered any injury of constitutional magnitude that is attributable to any of the

26  five named defendants.  He does not show the treatment provided by any of the named

27

28  REPORT AND RECOMMENDATION  - 7

1   defendants was inadequate.  He does allege that a subordinate person, who is not a named

2   defendant, acted inappropriately by interviewing him in an area where there was an alleged lack

3   of privacy.  However, this does not equate to liability against any named defendant.  See, Leer v.

4   Murphy, 844 F. 2d. 628, 632 (9th Cir. 1988).

5        The plaintiff's complaints regarding the segregating of residents by living units was

6   addressed in defendants overview briefing.  (Dkt. # 229, page 10).  Residents have access to

7   there own living unit, not the living unit of others.  The housing assignments are based on need

8   and treatment considerations.  The considerations included are the following: (1) does the

9   resident have special needs, (2) what is the resident's treatment status, and, (3) what level of

10  maintenance does the resident require, low, medium, or high.  (Dkt. # 229, page10).  Plaintiff

11  has failed to contradict defendants assertions that the housing assignments and segregation of

12  the residents into groups is not the product of professional judgment and designed to allow

13  residents who wish treatment to receive treatment without distraction.

14       The plaintiff's allegations regarding use of a level system, which gives privileges to

15  persons who engage in treatment, is likewise flawed.  The granting of privileges to persons who

16  engage in treatment does not mean that persons who do not receive those privileges are in any

17  way being punished.  To impose liability on any named defendant, plaintiff needs to show a

18  violation of a right of constitutional magnitude.

19       Mr. Curtis also complains of the actions of SCC staff without implicating any of the

20  named defendants in this action.  (Dkt. # 428).  The search that allegedly occurred where eight

21  apples were taken is an example.  He has not named any defendant as having taken part in the

22  search or having authorized this search.

23       In short, the court has reviewed the complaint, the defendants motion for summary

24  judgment, the plaintiff's response, and his declaration.  To survive summary judgment the

25  plaintiff must identify a clearly established right and produce facts showing a violation of that

26  right in which the named defendants personally participated.  Plaintiff has not come forward

27

28  REPORT AND RECOMMENDATION  - 8

1   with probative evidence to defeat defendants motion.  The remaining defendants are entitled to

2   summary judgment based on Mr. Curtis's lack of evidence that he was subject to an

3   unconstitutional condition.   This plaintiff's claims should be **DISMISSED WITH**

4   **PREJUDICE.**

5                                                    CONCLUSION

6          Defendants are entitled to summary judgment as plaintiff has failed to show

7   any injury of constitutional magnitude attributable to the conduct of the five named defendants**.**

8   A proposed order and proposed judgment accompanies this Report and Recommendation.

9          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil

10  Procedure, the parties shall have ten (10) days from service of this Report to file written

11  objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

12  objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the

13  time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on

14  **September 23rd 2005**, as noted in the caption.

15

16

17

18         DATED this 30th day of August, 2005.

19

20

21                                                    Karen L. Strombom
                                                      United States Magistrate Judge
22

23

24

25

26

27

28  REPORT AND RECOMMENDATION  - 9