UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAPELLO *et al.*,<br><br>       Plaintiffs,<br><br>   v.<br><br>SELING,  *et al.*,<br><br>       Defendants. | Case No. C02-5242RBL<br><br>REPORT AND RECOMMENDATION<br>RE: JAMES CALDERWOOD<br><br>**NOTED FOR:**<br>**November 18rd, 2005** |

   This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B).  Before the court is one of 22 separate motions for summary judgment filed by defendants  There are five defendants named in this action.  They are, Mark Seling, Robert Smith, Vince Gollogly, Lyle Quasim, and Dennis Braddock.  This Report and Recommendation deals only with the claims of James Calderwood.

PROCEDURAL HISTORY

   Defendant's filed a large number of summary judgment motions during July of 2004.  The dispositive motion cut off date was July 30th, 2004.  (Dkt. # 195).  The motions were all supported by a general brief and declarations, (Dkt. # 229 and 230 through 242).  On July 20th, 2004, defendants filed a memorandum specific to Mr. Calderwood.  (Dkt. # 291).  This memorandum and attached exhibits set forth mental health treatment and issues specific to Mr.

REPORT AND RECOMMENDATION  - 1

1  Calderwood and the action in general. (Dkt. # 230 to 242).

2  On August 11th, 2004 plaintiffs filed a single response to all the summary judgment
3  motions containing over 1000 pages. (Dkt. # 404 to 424). While the court had authorized the
4  filing of an over length brief, the court did not authorize the filing of this document. It has taken
5  a considerable amount of time, but, the court has considered the briefing filed. The court has
6  also considered Plaintiff's declaration and the attachments to that document. (Dkt. # 409).

## FACTS AND CLAIMS

8  This action is one in a series of legal actions regarding the Special Commitment Center,
9  SCC. Plaintiff challenges mental health and medical treatment provided and his conditions of
10 confinement. The plaintiff's are all persons confined for mental health treatment. The SCC is
11 designed to treat persons whose mental abnormalities or personality disorders make them likely
12 to engage in predatory acts of sexual violence. (Dkt. # 229, page 3).

13 For over a decade the SCC has operated under federal oversight as a result of
14 injunctions issued by the United Stated District Court Western District of Washington at
15 Seattle. The court found the conditions of confinement in 1991 to be unconstitutional and
16 found the mental health treatment offered at that point in time to be inadequate. <u>Turay v.
17 Seling</u>, C91-0664RSM. Federal oversight continues in a limited capacity to this day. There
18 have been high and low points during the years of oversight including findings of contempt, and
19 findings that portions of the injunction had been fulfilled. On June 19th, 2004 the court found
20 the defendants in substantial compliance and lifted the injunctions with one exception. <u>Turay v.
21 Seling</u>, C91-0664RSM (Dkt # 1906). Judicial oversight continues only as to the one exception.

22 This plaintiff, Mr. Calderwood, was sent to the Special Commitment Center in April of
23 2001. (Dkt. # 409, deposition of Mr. Calderwwod). By April of 2001 defendants Lyle Quasim
24 and Robert Smith no longer worked at the Special Commitment Center. (Dkt. # 291, page 7).
25 Mr. Quasim left in June of 2000 and Dr. Smith in August of 1999. (Dkt. # 291, page 7).

26 Plaintiff has been diagnosed as suffering from Axis I Pararphilia, Sexual Attraction to

28 REPORT AND RECOMMENDATION - 2

1  Prepubescent males. On Axis II he has a diagnosis of Personality Disorder Not Otherwise
2  Specified with Anti Social Avoidant and Paranoid Features and Dysthymic Disorder. (Dkt. #
3  291, page 2).

4      This Plaintiff's primary concerns center around his allegation that the conditions of
5  confinement and medical care were inadequate. He provides specific examples. The first
6  example involves plaintiff suffering a heart attack on December 2nd, 2001. Plaintiff alleges
7  personnel at the SCC and DOC were slow in treating him and that one person walked past him
8  when he first called for help. However, the plaintiff does not provide any information or
9  evidence regarding the involvement of any person named as a defendant. (Dkt. # 409,
10 declaration dated December 10th, 2001). Plaintiff alleges he first felt pain at 11:35. That he was
11 taken to the clinic at 11:45 and flown off the Island by helicopter at approximately 12:55. (Dkt.
12 # 409, Declaration dated December 10th, 2001). He claims he was kept waiting for 45 minutes
13 at the hospital while the nurse iced an inmates sprained ankle before he was seen. (Dkt. # 409,
14 Declaration dated December 10th, 2001).

15     On February 14th, 2002 plaintiff was escorted from the island to a hospital for testing
16 related to his first heart attack. His allegations regarding the obstacles he encountered on this
17 trip include his being asked to walk over one hundred yards and walk up inclines because lifts
18 were not operational. (Dkt. # 409, Declaration dated February 15th, 2002). The Plaintiff
19 suffered another heart attack before he returned to his unit and he was again flown off the
20 island. (Dkt. # 409, Declaration dated February 15th, 2002). Plaintiff has since had a
21 defibrillation unit surgically installed in his chest. Again, plaintiff provides no information or
22 evidence showing any action taken by any named defendant. He only shows that a lift installed
23 and operated by the Department of Corrections was not working and that because of security
24 concerns surrounding the facility portions of a boardwalk were closed to motor traffic and he
25 had to walk.

26     The remainder of plaintiff's response to the motion for summary judgment details other

28 REPORT AND RECOMMENDATION - 3

1  complaints regarding equipment failures or problems with personnel not pushing his wheel chair
2  for him, but at no point does the plaintiff implicate any named defendant. (Dkt. # 409).
3      Defendants move for summary judgment and argue:
4  1.   The mental health treatment afforded plaintiff meets the constitutional minimum because it affords him the opportunity to
5       improve the condition for which he is institutionalized. (Dkt. # 291, page 4),
6
7  2.   That plaintiff's medical complaints do not rise to the level of a constitutional claim.
8  3.   Lack of personal participation.
9  4.   That Mr. Calderwoods confinement satisfies due process.
10 (Dkt. # 291, pages 4 to 8).
11     Defendant's motion for summary judgement is very specific. Defendants seek summary
12 judgment because the complaint does not "accurately represent each plaintiff's claims, and
13 because **each plaintiff must demonstrate the merit of his own claims to go forward**". (Dkt.
14 # 229)(emphasis added). Defendants ask for summary judgment based on the Eleventh
15 Amendment, qualified immunity, personal participation, and lack of a constitutional violation.
16 (Dkt. # 229, pages 18 through 37). In essence, defendants argue that none of the plaintiffs can
17 show an injury of constitutional magnitude specific to that plaintiff.
18     Mr. Calderwood fails to tie his evidence to any named defendant in this action and
19 therefore fails to show personal participation. The court declines to rule on the issue of whether
20 the medical complaints made rise to the level of a constitutional violation as no named defendant
21 is implicated in the actual treatment given.
22                      THE STANDARD
23     Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the
24 pleadings, depositions, answers to interrogatories, and admissions on file, together with
25 affidavits, if any, show that there is no genuine issue of material fact and that the moving party
26 is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled
27
28 REPORT AND RECOMMENDATION - 4

1  to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on
2  an essential element of a claim on which the nonmoving party has the burden of proof. Celotex
3  Corp. v. Catrett, 477 U.S. 317, 323 (1985).

4  There is no genuine issue of fact for trial where the record, taken as a whole, could not
5  lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v.
6  Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific,
7  significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ.
8  P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence
9  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions
10 of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service
11 Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

12 The determination of the existence of a material fact is often a close question. The court
13 must consider the substantive evidentiary burden that the nonmoving party must meet at trial,
14 e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W.
15 Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy
16 in favor of the nonmoving party only when the facts specifically attested by the party contradicts
17 facts specifically attested by the moving party. *Id.*

18 The nonmoving party may not merely state that it will discredit the moving party's
19 evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W.
20 Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra). Conclusory, nonspecific
21 statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v.
22 National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

23 In addition, the court is mindful that an action for injunctive relief focuses on whether
24 the combined acts or omissions of state officials violate a constitutional right or duty owed the
25 plaintiff. In contrast, when a plaintiff seeks to hold a defendant personally liable the inquiry into
26 causation is more specific and focuses on that persons specific actions. Leer v. Murphy, 844 F.

28 REPORT AND RECOMMENDATION - 5

2d. 628, 632 (9th Cir. 1988).

## DISCUSSION

The plaintiffs' reliance on <u>Turay</u> and other SCC injunctive relief cases is misplaced. The holdings in those cases do not equate to findings of liability for damages against any named defendant. This is because of the difference in standards of proof between actions for injunctive relief and actions for damages. This difference was briefed by defendants who stated:

> As Judge Leighton explained in a similar case: "Turay has no talismanic quality, the mere invocation of which conjures a cause of action." <u>Hoisington, et al. v. Seling, et al.</u>, No. C01-5228-RBL, October 28, 2003, Order at 6 (dkt. # 189). <u>Turay</u> is of assistance to plaintiffs in this case only if (1) they are able to identify a specific ruling from <u>Turay</u> that, for qualified immunity purposes, was sufficient to put defendants on notice that their conduct potentially violated plaintiffs' constitutional rights; or (2) they can point to a specific factual finding from <u>Turay</u> that could apply by way of collateral estoppel. In either case, each plaintiff must first show how a specific ruling or finding from <u>Turay</u> applies to his situation and establishes a violation of his constitutional rights. In doing so, each plaintiff must be aware that relief ordered in <u>Turay</u> does not represent the constitutional minimum. *See* <u>Sharp v. Weston</u>, 233 F.3d 1166, 1173 (9th Cir. 2000) ("A court may order 'relief that the Constitution would not of its own force initially require if such relief is necessary to remedy a constitutional violation.'"). In <u>Sharp</u>, the Ninth Circuit specifically noted that Judge Dwyer's findings in <u>Turay</u> did not imply the existence of constitutional rights. Thus, for example, Judge Dwyer's order that SCC provide residents private visitation rooms and educational opportunities did not mean that the residents had a constitutional entitlement to those things. Id.

(Dkt. # 229 pages 21 and 22).

The defendants filed a separate motion for summary judgment for each plaintiff that sets forth the treatment provided or available to that person and that person's factual history. The summary judgement standard allows defendants to require a plaintiff to "present specific, significant probative evidence." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Mr. Calderwood was informed of the summary judgment standard. (Dkt. # 195). The court specifically informed plaintiff that if the opposing party moved for summary judgment he would need to:

> **[s]et out specific facts in declarations, deposition, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that**

REPORT AND RECOMMENDATION - 6

    **contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment , if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.**

    <u>Rand v. Rowland</u>, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added). (Dkt. # 195). (emphasis in original order).  Mr. Calderwood has failed to come forward with any evidence to show that any right or duty owed to him has been violated by any named defendant in this action.  Indeed, two of the defendants, Quasim and Smith, no longer worked for the SCC when plaintiff arrived there. His allegations in the complaint are unsupported by any evidence that shows he has suffered any injury of constitutional magnitude that is attributable to any of the five named defendants.  Thus, the court focuses on the personal participation question.

    In his deposition plaintiff indicates he was not harmed by the alleged lack of medical care.  (Dkt. # 291, deposition of Calderwood at 55).  Further, the attachments to defendant's motion show that the plaintiff refuses to fully participate in treatment and refuses to engage in any treatment that requires him to make disclosures of his sexual conduct.  There is no showing that the treatment provided was inadequate.

    Plaintiff definitely raises questions  whether subordinate persons, who are not named defendants, acted appropriately in handling his medical issues, in helping him to move around the facility, as well as to and from the island, but this does not equate to liability against any named defendant.  <u>See</u>, <u>Leer v. Murphy</u>, 844 F. 2d. 628, 632 (9th Cir. 1988).  For the most part plaintiff's affidavit argues his case in the abstract.  He complains of the actions of SCC and DOC staff without implicating any of the named defendants in this action.  (Dkt. # 409).

    In short, the court has reviewed the complaint, the defendants' motion for summary judgment, plaintiff's response, and his declaration.  To survive summary judgment the plaintiff must identify a clearly established right and produce facts showing a violation of that right in which the named defendants personally participated.  Plaintiff has not come forward with

REPORT AND RECOMMENDATION  - 7

1  probative evidence to defeat defendants motion.

2  In his deposition plaintiff indicates he was not harmed the alleged lack of medical care.
3  (Dkt. # 291, deposition of Calderwood at 55). While plaintiff's declarations arguably contradict
4  his statement, he has not shown how any named defendant acted or failed to act.  Further, the
5  attachments to defendant's motion show that the plaintiff refuses to fully participate in treatment
6  and refuses to engage in any treatment that requires him to make disclosures of his sexual
7  conduct.  There is no showing that the treatment provided by any of the named defendants was
8  inadequate.

9  The defendants are entitled to summary judgment for lack of personal participation.
10 This plaintiff's claims should be **DISMISSED WITH PREJUDICE.**

CONCLUSION

12 Defendants are entitled to summary judgment as plaintiff has failed to show
13 any injury of constitutional magnitude attributable to the conduct of the five named defendants**.**
14 A proposed order and proposed judgment accompanies this Report and Recommendation.

15 Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil
16 Procedure, the parties shall have ten (10) days from service of this Report to file written
17 objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those
18 objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the
19 time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on
20 **November 18th, 2005**, as noted in the caption.

21 DATED this 31st day of October, 2005.

*[signature]*

Karen L. Strombom
United States Magistrate Judge

28 REPORT AND RECOMMENDATION - 8