UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAPELLO *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>SELING, *et al.*,<br><br>    Defendants. | Case No. C02-5242RBL<br><br>REPORT AND RECOMMENDATION REGARDING RICARDO CAPELLO<br><br>**NOTED FOR:**<br>December 23rd, 2005 |

   This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Before the court is a summary judgment motion filed by defendants. There are five defendants named in this action. They are, Dr. Mark Seling, Dr. Robert Smith, Dr. Vince Gollogly, Lyle Quasim, and Dennis Braddock. This Report and Recommendation deals only with the claims of Ricardo Capello.

PROCEDURAL HISTORY

   Defendants filed a large number of summary judgment motions during July of 2004. The dispositive motion cut off date was July 30th, 2004. (Dkt. # 195). The motions were all supported by a general brief and declarations, (Dkt. # 229 and 230 through 242). On July 27th, 2004, defendants filed a memorandum specific to Mr. Capello. (Dkt. # 312). There are supporting declarations which set forth the mental health treatment available and issues specific

Report and Recommendation - 1

1  to Mr. Capello. (Dkt. # 312 through 314).

2  On August 11th, 2004 plaintiffs filed a single response to all the summary judgment motions. (Dkt. # 404). Plaintiff supports his response with a number of declarations. (Dkt. # 405 through 421). Mr. Capello has filed a declaration specific to himself. (Dkt. # 405). The defendants reply addresses each claim raised and urges the court to grant summary judgement as plaintiff Capello has failed to submit any specific evidence showing a genuine issue of material fact. (Dkt. # 389).

## FACTS AND CLAIMS

This action is one in a series of legal actions regarding the Special Commitment Center (SCC). Plaintiffs challenge the mental health treatment provided and conditions of confinement. The plaintiffs are all persons confined for mental health treatment. The SCC is designed to treat persons whose mental abnormalities or personality disorders make them likely to engage in predatory acts of sexual violence. (Dkt. # 229, page 3).

For over a decade the SCC has operated under federal oversight as a result of injunctions issued by the United States District Court in Seattle. The court found the conditions of confinement in 1991 unconstitutional and found the mental health treatment offered at that point in time to be inadequate. Turay v. Seling, C91-0664RSM. There have been high and low points during the years of oversight including findings of contempt, and findings that portions of the injunction had been fulfilled. On June 19th, 2004 the court found the defendants in substantial compliance and lifted the injunctions with one exception. Turay v. Seling, C91-0664RSM (Dkt # 1906).

This plaintiff, Mr. Capello, was first sent to the SCC as a pre-trial detainee on August 6th, 2001. (Dkt. # 312, Exhibit 1, Deposition of Capello, page 10). His criminal conviction history includes 1982 convictions from Hawaii for first degree sodomy and sexual abuse and a 1991 conviction by Alford plea for first degree kidnaping with sexual motivation. (Dkt. # 312, Exhibit 2).

Report and Recommendation - 2

1  When Plaintiff first arrived at the SCC he signed forms authorizing treatment.  He contends he signed those forms under duress and he has consistently refused treatment.  (Dkt. # 312, Exhibit 1, Deposition of Capello, page 26 to 38).  Despite his conviction history plaintiff maintains he does not need sexual deviancy treatment.  (Dkt. # 312, Exhibit 1 Deposition of Capello, page 26).   Plaintiff has indicated he intends to litigate his way out of the program. (Dkt. # 312, Exhibit 1, page 26).

Mr. Capello has received medical treatment for a number of issues including an unstable ankle and Hepatitis C and has been repeatedly tested for long term changes to his system as a result of his medical condition.  (Dkt. # 314, attached medical record).  While he challenges the adequacy of the medical treatment he provides no evidence to show he has suffered any injury or that any named defendant provided medical treatment.  Plaintiff is employed in a kitchen custodial position.  (Dkt. # 312, Exhibit 1, Deposition of Capello).

The defendants represent Mr. Capello's diagnosis as sexual sadism with a separate diagnosis of antisocial personality disorder.  (Dkt. # 312, page 2, citing to Exhibit 2).  A careful reading of the exhibit shows that plaintiff had a diagnosis on Axis I of sexual sadism, alcohol abuse, and poly substance abuse and an Axis II diagnosis of antisocial  personality disorder, however the mental health expert who did the review for defendants disputes the diagnosis of antisocial personality disorder and believes instead that plaintiff suffers from the far more serious condition of psychopathic personality disorder.  (Dkt. # 312, Exhibit 2).  Dr. Richards diagnosis is Axis I sexual sadism, alcohol abuse, poly substance dependence, paraphilia, not otherwise specified, non consent rape and Axis II psychopathic personality disorder.  (Dkt. # 312, Exhibit 2, page 6).

The defendants submitted the declaration of Dr. Jason Dunham, a licensed psychologist, who is of the opinion that the treatment available to plaintiff provides plaintiff with an opportunity to improve the conditions for which he is committed.  (Dkt. # 313).  The Plaintiff has not contradicted the factual representations or assertions made by defendants and instead

Report and Recommendation  - 3

1  argues he has no sexual deviancy and wants treatment for the mental abnormalities for which he
2  is confined.  (Dkt. # 312, Exhibit 1, Deposition of Capello pages 34 to 38).  Mr. Capello does
3  not specify what those condition are except to mention the antisocial personality disorder
4  diagnosis which is in question, as noted above.

5  Defendants' motion for summary judgement is very specific.  Defendants seek summary
6  judgment because the complaint does not "accurately represent each plaintiff's claims, and
7  because **each plaintiff must demonstrate the merit of his own claims to go forward**".  (Dkt.
8  # 229)(emphasis added).  Defendants ask for summary judgment based on the Eleventh
9  Amendment, qualified immunity, personal participation, and lack of a constitutional violation.
10  (Dkt. # 229, pages 18 through 37).  In essence, defendants argue that none of the plaintiffs can
11  show an injury of constitutional magnitude specific to that plaintiff.

12  Plaintiff places great weight on the findings of fact made in <u>Turay v. Seling</u>, and other
13  cases without a showing that the findings apply to him.  Thus, Mr. Carello continues to argue
14  this action in the abstract.  By way of example, he argues damages are "best weighed by
15  everyday spent without constitutionally adequate mental health treatment and more considerate
16  conditions of confinement than prisoners."  (Dkt. # 404, page 6).  Mr. Capello has no evidence
17  to support his assertions that the treatment offered him by any named defendant  is in any was
18  inadequate.  Plaintiff's response does not address defendants position, the requirement of a
19  specific evidentiary showing.

20  Plaintiff does raise an issue of confidentiality an alleges he was asked to participate in
21  one on one sessions in a crowded day room, but plaintiff does not implicate any named
22  defendant as having participated or authorized this conduct and he does not show that
23  confidential material was discussed.  (Dkt. # 312, Exhibit 1, Deposition of Capello, page 28 and
24  29).

25  Two of the named defendants in this action, Lyle Quasim and Dr. Robert Smith left their
26  position with the state prior to August 6th, 2001, when Mr. Capello first arrived at the Special

28  Report and Recommendation  - 4

Commitment Center. (Dkt. # 242, Declaration of Beverly Wilson ¶¶ 2,3,and 5). Further, plaintiff admits he has never had any personal contact with Dennis Braddock. (Dkt. # 312, Exhibit 1, Deposition of Capello, page 66). When asked if either defendant Gollogly or Seling had ever violated his rights plaintiff indicated they had not but that they were sued based on their position and allowing the day to day operations from a "clinical point." (Dkt. # 312, Exhibit 1, Deposition of Ricardo Capello page 66 and 67).

## THE STANDARD

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, supra at 254; T.W. Elec. Service Inc., supra at 630. The court must resolve any factual dispute or controversy in favor

Report and Recommendation - 5

1   of the nonmoving party only when the facts specifically attested by the party contradicts facts
2   specifically attested by the moving party.  T.W. Elec. Service Inc., supra at 630.

3         The nonmoving party may not merely state that it will discredit the moving party's
4   evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W.
5   Elec. Service Inc., supra at 630. (relying on Anderson, supra).  Conclusory, nonspecific
6   statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  Lujan v.
7   National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

8         In addition, the court is mindful that an action for injunctive relief focuses on whether
9   the combined acts or omissions of state officials violate a constitutional right or duty owed the
10  plaintiff.  In contrast, when a plaintiff seeks to hold a defendant personally liable the inquiry into
11  causation is more specific and focuses on that persons specific actions.  Leer v. Murphy, 844 F.
12  2d. 628, 632 (9th Cir. 1988).

## DISCUSSION

14        The plaintiffs' reliance on Turay and other SCC injunctive relief cases is misplaced.  The
15  holdings in those cases do not equate to findings of liability for damages against any named
16  defendant.  This is because of the difference in standards of proof between actions for injunctive
17  relief and actions for damages.  This difference was briefed by defendants who stated:

> As Judge Leighton explained in a similar case: "Turay has no talismanic quality, the mere invocation of which conjures a cause of action." Hoisington, et al. v. Seling, et al., No. C01-5228-RBL, October 28, 2003, Order at 6 (dkt. # 189). Turay is of assistance to plaintiffs in this case only if (1) they are able to identify a specific ruling from Turay that, for qualified immunity purposes, was sufficient to put defendants on notice that their conduct potentially violated plaintiffs' constitutional rights; or (2) they can point to a specific factual finding from Turay that could apply by way of collateral estoppel. In either case, each plaintiff must first show how a specific ruling or finding from Turay applies to his situation and establishes a violation of his constitutional rights. In doing so, each plaintiff must be aware that relief ordered in Turay does not represent the constitutional minimum. See Sharp v. Weston, 233 F.3d 1166, 1173 (9th Cir. 2000) ("A court may order 'relief that the Constitution would not of its own force initially require if such relief is necessary to remedy a constitutional violation.'"). In Sharp, the Ninth Circuit specifically noted that Judge Dwyer's findings in Turay did not imply the existence of constitutional rights. Thus, for example, Judge Dwyer's order that SCC provide residents private visitation rooms and educational opportunities did not mean that the residents had a

28  Report and Recommendation - 6

constitutional entitlement to those things. Id.
(Dkt. # 229, pages 21 and 22).

The defendants filed a separate motion for summary judgment for each plaintiff that sets forth the treatment provided or available to that person and that persons factual history. The summary judgement standard requires plaintiff to "present specific, significant probative evidence.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Mr. Capello was informed of the summary judgment standard. (Dkt. # 195). The court specifically informed plaintiff that if the opposing party moved for summary judgment he would need to:

> **[s]et out specific facts in declarations, deposition, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment , if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.**

<u>Rand v. Rowland</u>, 154 F.3d 952, 962-963 (9th Cir. 1998)(emphasis added).
(Dkt. # 195). (emphasis in original order). Mr. Capello has failed to come forward with any evidence to show that any right or duty owed to him has been violated by any named defendant,

Mr. Capello challenges room searches performed without a warrant but he fails to show that any named defendant ever searched his room. Further, he fails to show the searches are unreasonable given that he is housed by law in a secure facility where items such as pornography are considered contraband.

Mr. Capello challenges not being allowed to order R-rated movies but fails to show the policy decision not to allow movies with such a rating is not treatment oriented. Mr. Capello also complains of the treatment he allegedly received from Department of Corrections personnel or inmates while the Special Commitment Center was housed inside the Mc Neil Island Correctional facility and he complains of the treatment he received from Department of Corrections personnel when he left and returned to the McNeil Island on a number of occasions

Report and Recommendation - 7

for medical treatment.. Mr. Capello fails to show any named defendant participated in or condoned the alleged misconduct. Personal participation is the crux of a damage claim in a civil rights action. <u>Leer v. Murphy</u>, 844 F. 2d. 628, 632 (9th Cir. 1988). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a claim under 42 U.S.C. § 1983. <u>Padway v. Palches</u>, 665 F.2d 965 (9th Cir. 1982).

      Mr. Capello's allegations are unsupported by any evidence that shows he has suffered any injury attributable to the conduct of the defendants. The defendants are entitled to summary judgment as a matter of law.

CONCLUSION

      Defendants are entitled to summary judgment as plaintiff has failed to show a any injury. Defendants motion for summary judgment should be **GRANTED.** A proposed order and proposed judgment accompanies this Report and Recommendation.

      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 23rd, 2005**, as noted in the caption.

      DATED this 2nd day of December, 2005.

                                          Karen L. Strombom  
                                          United States Magistrate Judge

Report and Recommendation - 8